# Exhibit C

ELECTRONICALLY FILED
4/15/2014 8:40 AM
57-CV-2014-900080.00
CIRCUIT COURT OF
RUSSELL COUNTY, ALABAMA
KATHY S. COULTER, CLERK

## IN THE CIRCUIT COURT FOR RUSSELL COUNTY, ALABAMA

| | | |
|---|---|---|
| DANNY CAIL, Husband and Administrator of the Estate of Teresa Cail, deceased, § § § § | | |
| Plaintiff, § § | | |
| vs. § § | Civil Action No. CV-2014-900080.00 | |
| JOE RYAN ENTERPRISES, INC., JOE RYAN ENTERPRISES, INC., D/B/A JOE RYAN TRUCKING, BRIDGESTONE AMERICAS, INC.; BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC d/b/a FIRESTONE; and JOE RYAN ENTERPRISES, INC., § § § § § § § § § | | |
| Defendants. § | | |

### SECOND AMENDED COMPLAINT

**COMES NOW** the Plaintiff, Danny Cail ("Plaintiff" and/or "Cail"), individually as husband and as Administrator of the Estate of Teresa Cail, deceased, by and through counsel of record, and files this Second Amended Complaint for wrongful death against Joe-Ryan Enterprises, Inc., Joe-Ryan Enterprise, Inc., d/b/a Joe-Ryan Trucking (collectively Joe-Ryan), Bridgestone Americas, Inc. and Bridgestone Americas Tire Operations, LLC d/b/a Firestone (collectively "Bridgestone"). As grounds therefore, the Plaintiff states as follows:

1

## STATEMENT OF THE PARTIES

1. Plaintiff, Danny Cail, is an individual over the age of nineteen (19) and is a resident of Lee County, Alabama. The decedent, Teresa Cail, was a resident of Lee County, Alabama at the time of her death. Danny Cail is the husband and Administrator of the Estate of Teresa Cail.

2. Defendant, Bridgestone Americas, Inc. is believed to be a Nevada corporation with its principal place of business in Tennessee. Defendant Bridgestone Americas, Inc., is engaged in the business of designing, manufacturing, and selling tires. Upon information and belief, Defendant Bridgestone Americas, Inc., is doing business by agent in the State of Alabama.

3. Defendant Bridgestone Americas Tire Operations, LLC d/b/a Firestone (hereinafter "Firestone") is believed to be a foreign limited liability company organized under the laws of the state of Delaware with its principal place of business in Tennessee. Upon information and belief, Defendant Bridgestone Americas Tire Operations, LLC d/b/a Firestone is doing business by agent in the State of Alabama.

4. Defendant, Joe-Ryan Enterprises, Inc. and Joe-Ryan Enterprises, Inc., d/b/a Joe-Ryan Trucking (collectively "Joe-Ryan"), is a foreign corporation with its principal place of business located at 1383 Brickyard Road, Phenix City, Russell County, Alabama.

5.     Venue is proper in this Court pursuant to ALA. CODE § 6-3-7(a)(1), (2) and (3) and Rule 82, in that the negligent acts of Defendant Joe-Ryan occurred in Russell County.

## THE PRODUCT

6.     The product involved in this action is a Firestone T839 Radial, 425/65R22.5 20PR tire ("tire" and/or "subject tire"), DOT #4D A2 3DF 0311.

## STATEMENT OF THE FACTS

7.     On March 8, 2013, Plaintiff's decedent was operating a 2005 Mack 700 truck, traveling in Muscogee County, Georgia.

8.     While traveling in Muscogee County, Georgia, the passenger's side front tire suffered a tread separation, causing the vehicle to lose control. As a direct and proximate result of the tread separation of the tire, the vehicle became uncontrollable and rolled over, causing the death of Teresa Cail.

9.     At the time of the accident, the subject tire was being used as intended and in a manner reasonably foreseeable to the Defendants.

10.    The Subject tire was at the time of the accident in substantially the same design and condition as when placed into the vehicle by Joe-Ryan.

11.    The vehicle and tire maintenance was performed by Defendant Joe-Ryan at its Russell County, Alabama facility.

## COUNT ONE

12. Plaintiff incorporates paragraphs 1 – 11 above as if fully set out herein.

13. Bridgestone, designed, selected, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold the tire made the basis of this action.

14. The subject tire was defectively manufactured and unreasonably dangerous because the tire prematurely failed when the tread separated and resulted in death and injuries to the occupants under foreseeable and anticipated driving conditions and situations. In fact, Bridgestone was aware of manufacturing issues prior to the subject tire being manufactured that could have been eliminated before the subject tire was manufactured.

15. The subject tire was defectively manufactured, for which Bridgestone is liable for Ms. Cail's death.

16. Bridgestone failed to incorporate manufacturing processes that would prevent or reduce the likelihood of tire tread separations.

17. Bridgestone failed to adequately warn the decedents, other consumers, or the public in general about the unsafe and defective condition of the tire known to Bridgestone, such that individuals like the decedents could

make informed and prudent decisions regarding traveling or riding on such tires.

18. Bridgestone failed to implement safe, technologically feasible, and economically practical manufacturing processes, which would have mitigated or cured the manufacturing defects of the subject tire.

19. Bridgestone failed to manufacture the subject tire in accordance with reasonable and accepted tire manufacturing practices which would have mitigated or cured the manufacturing defects.

20. Bridgestone failed to hold paramount the safety, health, and welfare of the public when manufacturing the tire made the basis of this suit.

21. Bridgestone failed to eliminate manufacturing hazards that it recognized to be associated with the product.

22. Bridgestone failed to protect, warn or guard consumers against hazards it recognized to be associated with the use of its products.

23. Bridgestone failed to complete an adequate risk/hazard analysis of potential harm to consumers if the subject tire experienced a tread separation or defective manufacturing.

24. There was sufficient tread depth remaining on the Subject tire when the tread and top belt separated from the bottom belt of the carcass.

5

25. Reasonably careful tire companies seek to manufacture tires so that the tread wears out before it fails by separation of the tread and top belt from the bottom belt and carcass.

26. The Subject tire failed during its useful tread life and as a result a separation of the tread and upper belt from the lower belt and carcass.

27. The premature failure of the Subject tire is a result of a separation of the tread and upper belt from the lower belt and carcass and was a result of manufacturing defects and maliciously and grossly negligent manufacturing practices.

28. Aside from foreseeable wear and aging, the Subject tire was in substantially the same condition at the time of the wreck as it was when it left Bridgestone's possession.

29. The defective, unfit, and unreasonably dangerous conditions of the Subject tire were a producing and proximate cause of the wreck made the basis of this suit.

30. Technologically and economically feasible safe or alternative manufacturing and quality assurance procedures existed that would have prevented or significantly reduced the risk of injury or death without substantially impairing the tire's utility.

31. Bridgestone makes tires for sale in the domestic market in the United States and also makes tires for sale in foreign markets outside the United States.

32. Bridgestone is aware of tire manufacturing practices employed by other tire manufacturers with plants in the United States.

33. Bridgestone is aware of tire manufacturing practices employed by other tire manufacturers with plants in the United States as a result of Bridgestone's reverse engineering of other tire manufacturers' tires.

34. Bridgestone is aware of tire manufacturing practices employed by the other tire manufacturers as a result of Bridgestone's access to Smithers reports on other tire manufacturers' tires.

35. Bridgestone manufactured the Subject tire without using the most robust combination of manufacturing and quality assurance procedures Bridgestone had available.

36. Bridgestone has possession of documents, testimony, and information that confirms Bridgestone made the Subject tire despite knowledge that these tires were in need of improved manufacturing and quality assurance practices with respect tire's susceptibility to belts and tread separations.

37. Bridgestone has possession of documents, testimony, and information that confirm Bridgestone made the Subject tire despite knowledge of

the means of improving its tires' resistance to belt and tread separations as a result of its technical correspondence regarding radial tires and improved separation resistance.

38. Bridgestone has possession of documents, testimony, and information that confirm Bridgestone made the Subject tire despite knowledge of the causes of belt and tread separations as a result of its documentation listing the causes of tread separation.

39. Bridgestone has possession of documents, testimony, and information that confirm Bridgestone made the Subject tire despite knowledge of the causes of belt or tread separations as a result of its correspondence with plant managers.

40. Bridgestone has possession of documents, testimony, and information that confirm Bridgestone made the Subject tire despite knowledge of the cause of belt and tread separations as a result of its own documentation on tire durability.

41. Bridgestone has possession of documents, testimony, and information that confirm Bridgestone made the Subject tire despite knowledge of Bridgestone personnel discussing and documenting the foreseeability of a loss of control and consequent fatal or injurious crash as a result of a tire failure at highway speeds.

42. Bridgestone has possession of documents, testimony, and information that confirm Bridgestone made the Subject tire despite knowledge of Bridgestone personnel discussing and documenting the imperative nature of improving the manufacturing of Bridgestone's tires and Bridgestone's responsibility to implement such manufacturing improvements.

43. Bridgestone has possession of documents, testimony, and information which confirm that its manufacturing practices include or have included curing at overheated temperatures to increase production by accelerating cure time.

44. Bridgestone has possession of documents, testimony, and information which confirm that its manufacturing practices include or have included the insufficient use of x-rays to detect air or steam pockets and other contaminants.

45. Bridgestone has possession of documents, testimony, and information which confirm that it has established a link between certain cured tire defects and their probable causes.

46. Bridgestone has possession of documents, testimony, and information which confirm that it has established a link between non-conformance to standards in tread separations.

47. Bridgestone has possession of documents, testimony, and information which confirm that it has allowed persons to tour its tire manufacturing plants without requiring that they sign a confidentiality agreement.

48. Bridgestone has possession of documents, testimony, and information which confirm that it has been ordered to allow litigants to tour its tire manufacturing plants.

49. Bridgestone has possession of documents, testimony and information which confirm the dangers to the traveling public associated with tire tread separations.

50. As a direct and proximate result of the manufacturing defects and lack of warning in the subject tire, Ms. Cail, deceased, suffered fatal injuries caused by the Subject tire tread separation.

## COUNT TWO
### (Negligence and/or Wantonness of Defendant Bridgestone)

51. Plaintiff incorporates paragraphs 1 – 49 above as if fully set out herein.

52. Bridgestone owed a duty of care to the Plaintiff and the consumer public in general to manufacture and sell a reasonably safe tire and to warn about dangers in the model tire that Bridgestone was aware of.

53. Defendant, Bridgestone, had a duty to hold paramount the safety, health, and welfare of the public in manufacturing the tire made the basis of this suit.

54. Defendant, Bridgestone, had a duty to eliminate through manufacturing hazards they recognized to be associated with the use of the tire made the basis of this suit.

55. Bridgestone had a duty to protect or guard consumers against hazards it recognized to be associated with the use of its product if it was able to eliminate the hazard through manufacturing procedures.

56. Bridgestone had a duty to warn consumers of hazards recognized to be associated with the use of its product if such recognized hazards could not be guarded against or manufactured out.

57. Bridgestone breached, in a negligent, grossly negligent, or wanton manner its duty of care in one or more respects as set forth in **COUNT ONE** and **COUNT TWO** above.

58. As a direct and proximate result of the design, manufacturing defects and lack of warning in the subject tire, Ms. Cail, deceased, suffered fatal injuries caused by the subject tire tread separation.

## COUNT THREE

### (Negligence, Gross Negligence, and/or
### Wantonness of Joe-Ryan Enterprises, Inc.)

59. Plaintiff incorporates paragraphs 1 - 58 above as if fully set out herein.

60. Defendant Joe-Ryan owed and undertook a duty of care to the Plaintiff to maintain, inspect, repair, service and warn about dangers of the subject truck, including the tires, involved in this incident that could result in loss of control of the vehicle. Defendant Joe-Ryan also undertook such duties and negligently and/or wantonly performed its undertaking. Defendant Joe-Ryan improperly inspected and/or failed to inspect the subject vehicle and tires Russell County, Alabama, when it serviced and performed maintenance for the vehicle prior to the wreck. Joe-Ryan failed to identify conditions in the vehicle and/or tires that would affect the handling of the subject truck and which could lead to the loss of control of the truck. Joe-Ryan also negligently selected and installed the tire made the basis of this suit on the subject vehicle. Such conduct occurred in Russell County, Alabama. Joe-Ryan failed to properly inspect the subject tire for defects that could lead to a loss of control of the vehicle, including but not limited to manufacturing defects. Joe-Ryan also failed to properly inspect and repair the vehicle involved in this action to ensure proper handling and

vehicle control. Joe-Ryan's actions led to the placement of a defective tire on the subject vehicle and improper maintenance of the subject vehicle which caused the vehicle to be uncontrollable at highway speeds. All of Joe-Ryan's actions were a proximate cause of the wreck made the basis of this action and Plaintiff's damages.

61.     Defendant Joe-Ryan and the fictitiously described Defendants negligently and/or grossly negligent and/or wantonly maintained, inspected, serviced and/or failed to inspect, failed to warn of conditions of the vehicle and/or tires on the vehicle made the basis of this suit which could lead to the loss of control at highway speeds and in doing so caused the wrongful death of Teresa Cail.

## COUNT FOUR
**(Injuries and Damages)**

62.     Plaintiffs incorporate as if re-alleged fully herein paragraphs 1-61 above.

63.     As a direct and proximate result of the negligence and misconduct of Defendants, as well as the unsafe and unreasonably dangerous tire, Ms. Cail was killed, and Danny Cail, individually as husband and as Administrator, is entitled to recover from all the Defendants the full value of the life of the deceased.

64. The estate of Ms. Cail is entitled to recover funeral expenses and other costs associated with her death.

65. The estate of Ms. Cail is also entitled to recover the conscious pain and suffering that Ms. Cail experienced prior to his death.

## COUNT FIVE

### (Wrongful Death)

66. Plaintiff incorporates as if realleged fully herein paragraphs 1 – 65 above.

67. Danny Cail is a surviving spouse of Teresa Cail, deceased, and has standing to recover for the wrongful death of her husband.

68. At the time of his death, Teresa Cail was 45 years old. Plaintiff Danny Cail brings this action individually for the full value of the life of Teresa Cail.

## COUNT SIX

### (Punitive Damages)

69. Plaintiff incorporates as if realleged fully herein paragraphs 1 - 68 above.

70. Defendants were aware long before this incident occurred that the subject tire would be used on vehicles by individuals, over the roads and highways of the State of Alabama and Georgia.

71. Defendants were aware long before this incident occurred that the subject tire was defective and dangerous. Defendant Joe-Ryan was also aware of the need for performing proper maintenance, servicing and inspections. Despite their knowledge, the Defendants did nothing to remedy or mitigate problems so that innocent victims like Ms. Cail would not be injured or killed.

72. Despite Defendants' knowledge of the dangerous defects in the subject tire and improper maintenance and inspection, the Defendants did nothing to warn its customers of the problems so as to afford innocent victims like Ms. Cail needed information to avoid being injured or killed.

73. As a result of the Defendants' callous, grossly negligent, wanton or reckless indifference to the safety and well-being of the consumer public users said tires and services and other similar tires, numerous victims have been injured, maimed, or killed due to tire tread separations and improper tire placement in accidents over time, and people continue to be injured, maimed and killed in such incidents even today.

74. There is clear and convincing evidence that the Defendants acted with such willful, grossly negligent, wanton, and reckless indifference, demonstrating an entire want of care for the safety and well-being of victims like Ms. Cail and others so as to evidence a conscious indifference to the consequences of their acts and thereby demand an award of punitive damages

15

against the Defendants, including Fictitious Parties Nos. 1-14 above, that will punish them for the harm they have caused and that will deter them from similar misconduct.

## PRAYER FOR RELIEF

75.   Plaintiff incorporates as if realleged fully herein paragraphs 1 - 74 above.

76.   Plaintiff, Danny Cail, as husband and Administrator of the Estate of Teresa Cail, seeks to recover all special and general damages from Defendants to the full extent allowable under the law, including damages for Ms. Cail's pain, suffering, fright, mental anguish, and lost wages.

77.   The Plaintiff, Danny Cail, as husband and Administrator of the Estate of Teresa Cail, seeks to recover punitive damages from the Defendants for their grossly negligent and/or wanton conduct, in an amount sufficient to punish Defendants for what they have done to the Plaintiff and the Decedent, and to deter them from continuing to cause harm to others.

78.   The Plaintiff, Danny Cail, as husband and Administrator of the Estate of Teresa Cail, demands damages in an amount equal to the full value of his wife's life as provided under the law.

**PLAINTIFF DEMANDS A TRIAL STRUCK BY JURY**

        /s/ Benjamin E. Baker, Jr.
        BENJAMIN E. BAKER (BAK025)
        Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
  PORTIS & MILES, P. C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343

        /s/ William J. Benton, Jr.
        WILLIAM J. BENTON

BENTON & BENTON
Post Office Box 2850
Phenix City, Alabama 36868-2850
(334) 297-6534

        /s/ L. Shane Seaborn
        L. SHANE SEABORN

PENN & SEABORN, LLC
Post Office Box 988
Clayton, Alabama 36016-0688
(334) 775-9778

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 15th day of April, 2014, served a copy of the foregoing pleading to all parties to this proceeding by mailing same in the U.S. Mail properly addressed and first class postage prepaid to:

**Bridgestone Americas, Inc.**
National Registered Agents Inc.
2 North Jackson Street
Suite 605
Montgomery, Alabama 36104

**Bridgestone Americas Tire Operations, LLC**
National Registered Agents Inc.
2 North Jackson Street
Suite 605
Montgomery, Alabama 36104

**ATTORNEYS FOR DEFENDANT**
**JOE RYAN ENTERPRISES, INC.**
Mr. Alan Hargrove
Rushton Stakely Johnston & Garrett, OA
P.O. Box 270
Montgomery, Alabama 36101-0270