IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DANNY CAIL, Husband and Administrator of the Estate of Teresa Cail, Deceased,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JOE RYAN ENTERPRISES, INC., *et al.*,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　CASE NO. 3:14-CV-373-WKW<br>)　　　　　　[WO]<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

This wrongful-death action arrived here after removal from the Circuit Court of Russell County, Alabama, pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446(b). Pending is Plaintiff's Motion to Remand, which hinges solely on whether Defendant Joe Ryan Enterprises, Inc.'s principal place of business is in Georgia or in Alabama. (Doc. # 11.) If it is in Alabama, as Plaintiff contends, this action must proceed in the Alabama state court where it commenced. If Joe Ryan Enterprises, Inc.'s principal place of business is across the border in Georgia, as Defendants argue, diversity jurisdiction is proper.

The court allowed limited jurisdictional discovery, and the parties submitted supplemental briefing. The motion to remand is ready for resolution. Applying the nerve-center test adopted by the Supreme Court in *Hertz Corporation v.*

*Friend*, 559 U.S. 77 (2010), the court finds that Defendants have not met their burden of showing that Joe Ryan's principal place of business is not in Alabama. Accordingly, there is not complete diversity of citizenship, and Plaintiff's motion to remand is due to be granted.

## I.  STANDARD OF REVIEW

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). At the same time, "[f]ederal courts are courts of limited jurisdiction."  *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  Hence, in actions removed from state court to federal court, federal courts strictly construe removal statutes, resolve all doubts in favor of remand, and place the burden of establishing federal jurisdiction on the defendant.  *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328–30 (11th Cir. 2006).

## II.  BACKGROUND

Plaintiff's wife, Teresa Cail, died on March 8, 2013, while operating a 2005 Mack 700 truck as a contract driver for Defendant Joe Ryan Enterprises, Inc. ("Joe Ryan").  Plaintiff alleges that tire tread separation caused the accident that killed Mrs. Cail.  As the widower and administrator of the estate of Mrs. Cail, Plaintiff commenced this action in the Circuit Court of Russell County, Alabama, against

the tire's manufacturer and Joe Ryan.  Plaintiff alleges that Joe Ryan was responsible for the maintenance and service of the tire and the truck.

Joe Ryan, incorporated in Georgia in 1985, is a "heavy hauling and trucking business" with approximately thirty employees, thirty trucks, and twelve customers.  (Doc. # 105.)  The company has two officers and directors:  Norbert Quick, the president and chief executive officer ("CEO"); and Diane Quick, the secretary and chief financial officer ("CFO").

Joe Ryan hauls sand and gravel, scrap metal, and clay to and from "various places in Georgia and Alabama," and these operations are based out of Joe Ryan's location in Phenix City, Alabama.  (Doc. # 1-5; Mr. Quick's Dep., at 10.)  Phenix City is where Joe Ryan carries out its physical operations and has a business license.  The grounds at the Phenix City location include a maintenance shop with three mechanics, space to park the company-owned trucks, and office space for Joe Ryan's president and employees.

Mr. Quick's office is at the Phenix City location, where he works six days a week managing the business operations of the company, including personnel management, equipment purchasing, and negotiations with prospective customers.  More specifically, Mr. Quick "drum[s] up business," "puts out fires with thirty employees," hires and fires drivers, maintains and monitors drivers' records for

3

compliance with Department of Transportation regulations, and oversees the maintenance of company-owned vehicles. (Mr. Quick's Dep., at 9–12, 31–32, 38–39.) He decides when it is time to buy new trucks and whether to renovate the office space at Phenix City. (Mr. Quick's Dep., at 32, 38–39.)

Mr. Quick performs ninety percent of his job duties from the Phenix City site, and the other ten percent from Georgia, either from his or Ms. Quick's home. (Mr. Quick's Dep., at 53.) The employees consider Mr. Quick the "boss," alongside his dispatcher, whom Mr. Quick describes as his "right-hand man." (Mr. Quick's Dep., at 12, 15–16.) From the Phenix City site, the dispatcher assigns drivers their routes each day and collects tickets (or bills of lading) from the drivers after they make their deliveries. At the end of each week, the dispatcher takes the tickets to Ms. Quick. (Mr. Quick's Dep., at 28.)

Ms. Quick lives approximately twelve miles from the Phenix City location, across the border in Columbus, Georgia.[1] She manages the financial side of the business from her home office in Columbus. In Mr. Quick's words, "[W]e work and bring the money to her, and she takes care of it." (Mr. Quick's Dep., at 42.) Ms. Quick prepares payroll checks, pays corporate taxes, processes unemployment and worker's compensation claims, sends out billing statements, makes bank

---

[1] Mr. and Mrs. Quick, although married when Joe Ryan was formed in 1985, are now divorced. During their marriage, Ms. Quick performed her job duties from the marital home in Hamilton, Georgia. She now works from her home in Columbus, Georgia.

deposits, balances bank statements, types contracts for bids and new customers, deals with Joe Ryan's corporate accountant, and handles corporate filings with governmental agencies. (Ms. Quick's Dep., at 7–8; Ms. Quick's Aff., at 2.) Additionally, at the Columbus office, Ms. Quick maintains Joe Ryan's corporate books, personnel files, and banking records. No other employees work at Ms. Quick's home office, and Ms. Quick also has responsibilities as the CFO for another business that is not related to Joe Ryan.

The parties do not dispute that Joe Ryan's state of incorporation is Georgia, but they dispute whether Joe Ryan has its principal place of business in Alabama or Georgia for purposes of the complete-diversity requirement. Defendants argue that Joe Ryan's principal place of business, or nerve center, is in Georgia, while Plaintiff, whose decedent is an Alabama citizen,[1] maintains that it is in Alabama.

## III. DISCUSSION

Because this is a removed action, the burden of persuasion is on Defendants to show that complete diversity exists, and they must support the jurisdictional facts "by competent proof." *Hertz*, 559 U.S. at 96–97. Whether Joe Ryan maintains its principal place of business in Alabama or Georgia is dispositive of the jurisdictional issue, but Defendants do not have to "conclusively" demonstrate

---

[1] *See* 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . .").

Joe Ryan's principal place of business so long as they show that it "is not in a State which would destroy complete diversity," *i.e.*, is not in Alabama. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005).

"Complete diversity requires that no defendant in a diversity action be a citizen of the same state as any plaintiff." *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) (per curiam), *abrogated on other grounds by Hertz Corp.*, 559 U.S. at 77; *see also* § 1332(a). A corporation's citizenship derives from its state of incorporation and principal place of business. *See* § 1332(c)(1).

In *Hertz*, the United States Supreme Court adopted the nerve center test for determining a corporation's principal place of business for purposes of diversity jurisdiction. The "nerve center" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 92–93. Generally, the nerve center will "be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination . . . ." *Id.* at 93. Metaphorically, the nerve center is where the "brain" of the corporation is located. *Id.* at 95. The nerve center does not necessarily lie where "the bulk of a company's business activities visible to the public take place," that is, if the direction and control of those business activities

occur from a location in another state. *See id.* at 96. And "the nerve center test will not, in all instances, 'automatically generate a result,'" but "it nonetheless 'provides a sensible test that is relatively easier to apply'" than other formulations courts have used to pinpoint a corporation's principal place of business. *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 170 (4th Cir. 2014) (quoting *Hertz*, 559 U.S. at 96); *see also Guitar Holding Co., L.P. v. El Paso Natural Gas Co.*, No. 10cv214, 2010 WL 3338550, at *3 (W.D. Tex. Aug. 18, 2010) (explaining that *Hertz*'s adoption of the nerve center test, which focuses on "a single location – toward the center of direction, control, and coordination –" eliminates the need to "weigh[ ] different factors such as corporate functions, assets, or revenues against each another").

The *Hertz* Court also recognized that "there will be hard cases" under the nerve center test, for example, where the corporation "divide[s] [its] command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet." 559 U.S. at 95–96. Even in the hard cases, though, the nerve-center test should "point[ ] courts in a single direction, towards the center of overall direction, control, and coordination." *Id.* at 96.

Prior to *Hertz*, in circuits where the nerve center test already governed, courts formulated factors to assist in finding a corporation's nerve center. The district court in *Guitar Holding Co.* enumerated the "most common" factors:

7

> 1) location of corporate and executive offices; 2) the site where day-to-day control is exercised; 3) the exclusivity of decision making at the executive office and the amount of managerial authority at that location; 4) the location where corporate records and bank accounts are kept; 5) where the board of directors and stockholders meet; 6) where executives live, have their offices, and spend their time; 7) the location where corporate income tax is filed; 8) the location designated in the corporate charter; and 9) the location where a) major policy, b) advertising, c) distribution, d) accounts receivable departments and e) finance decisions originate.

2010 WL 3338550, at *3 (citation and internal quotation marks omitted).

Defendants contend that the "nerve center" of Joe Ryan is in Columbus, Georgia, where its CFO, Ms. Quick, works. Defendants portray Ms. Quick as the brains of the corporation, and they argue that the fact that the day-to-day operations of the business occur in Phenix City, Alabama, is not determinative.

Plaintiff says, on the other hand, that Mr. Quick is an "active CEO and President who directs, controls, coordinates[,] and manages the activities of Joe Ryan" from the operations facility in Phenix City, where the "'actual business activities'" of "'hauling and trucking'" take place. (Doc. # 23, at 14 (quoting Mr. Quick's Dep., at 42–43).) Plaintiff contends that, because Joe Ryan is a small company with a single operational facility, "the day-to-day operations of the company are the company's corporate activities," making Phenix City the nerve center. (Doc. # 23, at 18.) For the reasons that follow, the court finds that Defendants have failed to meet their burden of showing that Joe Ryan's principal place of business is not in Alabama.

Initially, the court observes that this is one of the "hard cases" to which *Hertz* alludes in that the only two officers of the corporation – the CEO and the CFO – perform their separate duties in different states.  559 U.S. at 1194.  Not surprisingly, Plaintiff and Defendants take opposing positions as to whether the CEO or the CFO directs, controls, and coordinates Joe Ryan's activities.

The foregoing legal principles yield several factors that arguably point to Columbus, Georgia, as the "nerve center."  Ms. Quick, the CFO, works from her home office in Columbus, Georgia.  In Columbus, the CFO calculates and files corporate income taxes, deals with the corporate accountant, administers payroll, collects delivery tickets, bills customers, receives payments, processes worker's compensation and unemployment claims, and handles corporate filings with governmental agencies.  Additionally, the corporate bank account is in Columbus; corporate books, corporate records, and personnel files are kept in Columbus; and governmental filings originate in Columbus.  In short, administration of the financial side of the business occurs in Columbus; the completion of paperwork for legally required corporate formalities takes place in Columbus; all corporate and personnel records are kept in Columbus; and the CFO works from an office in Columbus.

Notwithstanding the foregoing factors, after careful review of the evidence, including Mr. Quick's deposition testimony, the court finds that Mr. Quick – the

corporation's highest officer – maintains substantial discretion and authority over the direction, control, and coordination of Joe Ryan's activities from his Phenix City office, where he works six days a week and makes ninety percent of his business decisions. For one, the evidence reveals that the decision-making functions for generating income for the business are made in Phenix City. Mr. Quick, and sometimes his dispatcher to whom Mr. Quick has delegated substantial authority, decide who will conduct business with Joe Ryan. (Mr. Quick's Dep., at 39–40.) Mr. Quick also solicits new customer contracts. In Mr. Quick's words, "I know how to bid jobs, go after the customer. I could sell you a load of rock, even if you didn't need it . . . . [T]hat's how good I am. And that's what I'll do: meet people, make money." (Mr. Quick's Dep., at 44.) On the other hand, the evidence reveals that, in Columbus, Ms. Quick's job with respect to contracts is administrative. She types the contracts and sends the contracts where Mr. Quick tells her to send them. (Mr. Quick's Dep., at 61.) Overall, Mr. Quick is the one who makes the decisions that keeps the business financially afloat. He "brings the money" to Ms. Quick who then deposits the money in the bank account, cuts checks for employees, and pays the business's bills. (Mr. Quick's Dep., at 42.)

Moreover, the evidence establishes that Mr. Quick makes other major governance decisions with respect to the business's overall activities, without input from the CFO. From his Phenix City office, Mr. Quick decides who to hire and

fire and what capital expenditures to make (*e.g.*, when to buy new trucks and whether to renovate office space), and oversees the company's compliance with federal safety regulations.  Although Defendants object to the categorization, the facts bear out that Ms. Quick is more akin to a "bookkeeper," and not the source of the overall direction, control, and coordination of Joe Ryan's activities.[2]  (Mr. Quick's Dep., at 42.)

Defendants point out correctly that, under the nerve center test, a "corporation's day-to-day operations are not relevant to the nerve center test under *Hertz*."  *Hoschar*, 739 F.3d at 172 (citation and internal quotation marks omitted).  The court has focused not on the day-to-day operations, but rather on who is directing, controlling, and coordinating those operations.  In this instance, the daily operations happen to occur at the same locale where those operations are directed, controlled, and coordinated.  Based upon the structure of Joe Ryan's business, the operations facility and nerve center collide, and Defendants have presented no authority that the two cannot be the same.

---

[2]  Ms. Quick attests, without elaboration, that Joe Ryan "approves and disseminates all policies and procedures in Columbus," but this attestation is conclusory and not competent evidence.  The only written company-authored policy is the "company policy book," which also is referred to as the "employee handbook."  (Mr. Quick's Dep., at 41.)  The extent of Ms. Quick's substantive involvement in writing the policy book is not clear from the record.  (*See* Mr. Quick's Dep., at 41.)  The evidence bears out that Mr. Quick had discussions with his dispatcher and son at the Phenix City site with respect to the formulation of the policy book, but it is not clear if Ms. Quick was involved in those discussions.  There is evidence of Ms. Quick's administrative involvement in Columbus in that she typed the policy and made copies for Mr. Quick to distribute to employees at the Phenix City location. (Ms. Quick's Dep., at 12.)  Suffice it to say, the evidence does not establish that all corporate policy emanates from Columbus.

The conclusion is sound in this case.  Joe Ryan is not a corporation with "far flung" and multiple business operations that are controlled from a separate, central site.  *See Columbia Gas Transmission Corp. v. Burdette Realty Imp., Inc.*, 102 F. Supp. 2d 673, 676 (S.D. W. Va. 2000) ("The nerve center test has been recognized as well-suited for corporations that have no clear center of corporate business activity because the corporation is engaged in "far-flung and varied" business operations that are carried on in different states.").  Rather, the operations occur at a single location where there is a daily inflow and outflow of hauling activities, and it makes sense that Joe Ryan's top officer would remain on that site in order to exert direction, control, and coordination over the business's activities.  In short, "[t]he over-all supervision and coordination of all functional operations" is in Phenix City.  *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 864 (S.D.N.Y. 1959).

Joe Ryan can have only one principal place of business.  On this record, Defendants have not shown under the nerve center test either that Joe Ryan's principal place of business is in Georgia or that it is not in Alabama.  Accordingly, complete diversity is lacking, and remand is required.

## IV. CONCLUSION

Diversity jurisdiction in this removed action is lacking.  Accordingly, it is ORDERED that Plaintiff's motion to remand (Doc. # 8) is GRANTED, and that

this action is REMANDED to the Circuit Court of Russell County, Alabama, pursuant to 28 U.S.C. § 1447(c).

The Clerk of the Court is DIRECTED to take the necessary steps to effectuate the remand.

DONE this 4th day of November, 2014.

                                                    /s/ W. Keith Watkins
                                      CHIEF UNITED STATES DISTRICT JUDGE